# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| McRO, INC., d/b/a PLANET BLUE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-1509-LPS-CJB |
| | ) | |
| BETHESDA SOFTWORKS LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| McRO, INC., d/b/a PLANET BLUE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-1510-LPS-CJB |
| | ) | |
| HARMONIX MUSIC SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| McRO, INC., d/b/a PLANET BLUE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-1513-LPS-CJB |
| | ) | |
| ROCKSTAR GAMES INC., | ) | |
| | ) | |
| Defendant. | ) | |
| McRO, INC., d/b/a PLANET BLUE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-1517-LPS-CJB |
| | ) | |
| TAKE-TWO INTERACTIVE SOFTWARE INC., | ) | |
| | ) | |
| Defendant. | ) | |

| | |
|---|---|
| McRO, INC., d/b/a PLANET BLUE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 12-1519-LPS-CJB |
| ) | |
| 2K GAMES INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM ORDER**

Presently before the Court in these patent infringement actions is a motion to stay jointly filed by Defendants Bethesda Softworks LLC, ("Bethesda"), Harmonix Music Systems, Inc., ("Harmonix"), Rockstar Games Inc., ("Rockstar"), Take-Two Interactive Software Inc., ("Take-Two") and 2K Games Inc. ("2K") (collectively, "Defendants"). (Civil Action No. 12-1509-LPS-CJB ("*Bethesda* Action"), D.I. 23; Civil Action No. 12-1510-LPS-CJB ("*Harmonix* Action"), D.I. 15; Civil Action No. 12-1513-LPS-CJB ("*Rockstar* Action"), D.I. 27; Civil Action No. 12-1517-LPS-CJB ("*Take-Two* Action"), D.I. 26; Civil Action No. 12-1519-LPS-CJB ("*2K* Action"), D.I. 25)[1] For the reasons stated below, the Court DENIES Defendants' motion, without prejudice to Defendants' ability to renew the motion hereafter.

**I.    BACKGROUND**[2]

    **A.    Procedural History**

---

[1]    Representative citations will, unless otherwise noted, be to the docket in the *Harmonix* Action.

[2]    On July 31, 2013, Judge Leonard P. Stark referred all of the instant cases to the Court to hear and resolve all pretrial matters, up to and including the resolution of case-dispositive motions. (*See, e.g.*, D.I. 10)

The instant five actions are among thirteen originally filed in this District by Plaintiff McRo, Inc. d/b/a Planet Blue ("Plaintiff" or "McRo"), alleging infringement of U.S. Patent Nos. 6,307,576 ("the '576 Patent") and 6,611,278 ("the '278 Patent"). Defendants in the other eight actions filed motions seeking transfer or otherwise sought transfer to the United States District Court for the Central District of California ("Central District"); ultimately, the District Court transferred all eight cases to the Central District. The eight transferred actions were consolidated with related cases Plaintiff currently has pending in the Central District (collectively, "the Central District Actions") that allege infringement of the same patents-in-suit; in total, there are now over 20 Central District Actions. (D.I. 31, ex. A; D.I. 16 at 2)

In the instant five remaining cases, two Defendants (Harmonix and Bethesda) responded to the pending Complaints by filing Answers, (D.I. 8; *Bethesda* Action, D.I. 10), while three (Rockstar, Take-Two and 2K) filed motions to dismiss certain claims, pursuant to Federal Rule of Civil Procedure 12(b)(6). On March 17, 2014, the Court recommended that the District Court grant-in-part and deny-in-part those motions; the District Court adopted that recommendation on April 24, 2014. (*See, e.g.*, *Rockstar* Action, D.I. 43; *Rockstar* Action, D.I. 44) Thereafter, the Court held a consolidated Rule 16 Scheduling Conference in the five cases, and issued a joint Scheduling Order on January 24, 2014. (D.I. 20)

Pursuant to the Scheduling Order, claim construction briefing is set to begin on October 16, 2014, and a *Markman* hearing is scheduled for December 5, 2014. (*Id.* at 9-10) Fact discovery is scheduled to be completed on November 20, 2014, expert discovery is scheduled to conclude on March 13, 2015, and case dispositive motions are due April 2, 2015. (*Id.* at 3-5, 10) A trial date is set for August 17, 2015. (*Id.* at 11-12) In the *Harmonix* and *Bethesda* actions, the

parties have exchanged certain initial disclosures and discovery has begun. (*See, e.g.*, D.I. 25, 26, 30, 33, 34, 35 & 36) The parties have not yet exchanged any initial disclosures in the *Rockstar*, *Take-Two* and *2K* actions.

### B. The Petitions for IPR and the Motion to Stay

On November 27, 2013, a defendant in one of the Central District Actions, Naughty Dog, Inc., ("Naughty Dog") filed two petitions for *inter partes* review ("IPR") with the Patent Trial and Appeal Board of the United States Patent and Trademark Office ("PTO"), one for each of the patents-in-suit here. (D.I. 16 at 1 n.1, 3) Naughty Dog later filed corrected petitions on December 17, 2013. (*Id.*) The petitions—IPR2014-00197 (for the '278 Patent) and IPR2014-00198 (for the '576 Patent)—request that all claims of each patent be cancelled as anticipated or obvious by four prior art references identified in the petitions. (D.I. 16; *see also id.*, ex. 1 ("IPR2014-00197") at 4-5); IPR2014-00198 at 5, *available at* https://www.docketalarm.com/cases/PTAB/IPR2014-00198/Inter_Partes_Review_of_U.S._Pat._6307576/12-17-2013-PM-11598/Motion-4-Corrected_Petition_for_IPR_of_576_Patent/.

Defendants in this District—Bethesda, Harmonix, Rockstar, Take-Two and 2K—thereafter jointly filed the motion to stay on January 17, 2014. That motion requests that the Court stay the instant actions until the later of: (1) the PTO's initial decision on whether to grant Naughty Dog's petitions for IPR; or (2) the issuance of a claim construction order in the Central District Actions. (D.I. 16 at 1) It asserts that both of these events are "likely to occur by July 2014." (*Id.*) If the PTO institutes the IPR proceedings, Defendants indicate that they will ask the Court to "revisit whether a further stay pending conclusion of the IPR is warranted." (*Id.*) Briefing on the motion (including supplemental notices and statements filed by the parties) was

completed on February 25, 2014. (D.I. 31)

## II. STANDARD OF REVIEW

A court has discretionary authority to grant a motion to stay. *See Cost Bros., Inc. v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir. 1985); *see also Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988). This Court has typically considered three factors when deciding a motion to stay: (1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay, or allow the movant to gain a clear tactical advantage. *See, e.g., Softview LLC v. Apple Inc.*, Civ. No. 10-389-LPS, 2012 WL 3061027, at *2 (D. Del. July 26, 2012).

## III. DISCUSSION

After taking into account the three stay-related factors set forth above (to the extent they are relevant to the Court's decision here), as well as the particular circumstances of these cases, the Court will DENY Defendants' motion, with leave to renew the motion after the PTO makes a determination on whether to initiate IPR proceedings in response to Naughty Dog's petitions. The Court finds this to be the appropriate course here, for the reasons set forth below.

As an initial matter, the Court notes that it will hereafter primarily focus its discussion on the merits of whether to stay the instant cases pending the PTO's decision on the petitions for IPR. It does so because issuing a stay until the occurrence of the other triggering event put forward by Defendants—the issuance of the Central District's claim construction Order—is not likely to be beneficial. (D.I. 22 at 10-11) The Court comes to that conclusion while fully acknowledging, as both parties do, (D.I. 16 at 10; D.I. 22 at 10-11), that it *would* benefit by being

Case 1:12-cv-01509-LPS-CJB   Document 45   Filed 05/01/14   Page 6 of 9 PageID #: 631

able to review the Central District's final *Markman* Order before proceeding with claim construction in this case. But the reality is that whether the Court does or does not enter the requested stay, the Central District will likely have issued its final *Markman* Order well before significant claim construction activity occurs in this case. That is because the Central District has already held a *Markman* hearing, issued a tentative ruling on April 29, 2014, and is expected to issue a final decision by mid-2014, *see* Minutes of Markman Hearing, *McRo Inc. v. Namco Bandai Games Am. Inc.*, No. 2:12-cv-10322-GW-FFM (D.I. 292) (Apr. 29, 2014); (D.I. 16 at 1); whereas claim construction briefing in this case will not begin until October 2014 and a *Markman* hearing will not be held until December 2014. Thus, there will almost certainly be ample time—whether or not the motion to stay is granted—for the parties and the Court to react to the Central District's *Markman* ruling in advance of the Court's own claim construction efforts, to gain insight from that ruling, and (if appropriate) to make adjustments to the claim construction process thereafter.

The Court's focus thus turns to whether it should grant a stay until the PTO renders its decision on whether to institute IPR proceedings, in light of Naughty Dog's petitions. For three primary reasons, the Court will deny that stay request, without prejudice to Defendants' ability to renew the request after the PTO makes this initial determination.

The first relates to the status of the instant cases. As even Defendants acknowledge, the PTO's decision as to whether to grant IPR, which is "expected in May or June 2014," will come "well before the parties will have engaged in . . . time-consuming and costly claim construction and discovery in these cases." (D.I. 28 at 1; *see id.* at 8-9 (noting that any costs expended by Defendants in the "early stages" of the case will "pale compared to the costs of claim

construction, expert discovery, and trial")) That is, because discovery has only just begun in some of the instant cases (and has not really begun in earnest in others), even if the PTO ultimately institutes IPR proceedings, and Defendants renew their motion to stay thereafter, having proceeded forward with initial discovery in the meantime will not be unduly harmful to the efficient management of these proceedings. *Cf. Nexans Inc. v. Belden Inc.*, C.A. No. 12-1491-SLR-SRF, 2014 WL 651913, at *4 (D. Del. Feb. 19, 2014) (denying motion for stay until completion of IPR proceeding, which was anticipated to occur within three months from the Court's decision, in part because the "potential benefits of reduced discovery are not likely to be so significant to the parties that they warrant taking this case off of its present scheduling track"). Even if the Court granted such a motion at that later stage, the cabined amount of case-related activity that will have occurred in the interval will not have amounted to a large-scale waste of resources.

Second, the Court's decision has the benefit of allowing for harmonization with the Central District's approach to a stay request in the Central District Actions. (*See* D.I. 31, ex. A) In the instant matters, both sides have asserted in their briefing that the Court should be cognizant of the Central District Actions, and should thoughtfully consider whether and how events in the Central District Actions should impact the instant cases. (*See, e.g.*, D.I. 29; D.I. 31) To that end, the Court notes that the Central District has declined to stay the Central District Actions; in the interval, the Central District has permitted at least certain discovery to go forward, and has held a claim construction hearing. (*See* D.I. 31 & ex. A at 8-10) But the Central District has also indicated that it is inclined to consider granting a stay of some or all of the Central District Actions, were the PTO to determine to institute IPR proceedings. (*Id.*, ex. A

at 10-13) The Court's denial of the motion to stay (without prejudice to renew after the PTO's decision) may provide the Court with the ability—if Defendants' motion is later renewed—to take into account the Central District's final decision on a similar stay motion before determining how to equitably decide that same kind of motion in the instant cases.

Lastly, denial of the instant motion without prejudice to renew will allow for some additional clarity in the record. The Court would benefit by obtaining a more clear record than currently exists with regard to, *inter alia*: (1) what patent claims will likely be in dispute in the instant cases; and (2) what claims and defenses are likely to be pressed in earnest by the parties. That type of additional clarity may be served by allowing some initial discovery to proceed; obtaining it would help the Court to better decide whether a stay would simplify the issues for trial. *See Automatic Mfg. Sys., Inc. v. Primera Tech., Inc.*, No. 6:12-cv-1727-Orl-37DAB, 2013 WL 1969247, at *3 (M.D. Fla. May 13, 2013). Additionally, further clarity will come simply from receiving the PTO's decision itself. As Plaintiff asserts, "[i]f no review is instituted, the [possible basis for a further stay] is moot[;] [and if the PTO] does institute a review, the Court will have the benefit of the [PTO's] evaluation of Naughty Dog's IPR petition, will be able to examine the grounds upon which review has been granted, and can then determine the effects, if any, of such review on the pending cases." (D.I. 22 at 6-7); *see also Automatic Mfg. Sys., Inc.*, 2013 WL 1969247, at *3.[3]

---

[3] The Court acknowledges that despite these potential benefits, there are still cases where a decision to stay a patent case can be appropriately issued even prior to the PTO's decision on whether a petition for IPR will be granted—especially where the other stay-related factors mitigate strongly in favor of a stay. *See Neste Oil OJY v. Dynamic Fuels, LLC*, Civil Action No. 12-1744-GMS, 2013 WL 3353984, at *4 (D. Del. July 2, 2013); *see also Princeton Digital Image Corp. v. Konami Digital Ent. Inc.*, Civil Action Nos. 12-1461-LPS-CJB, 13-335-LPS-CJB, at 5-6 & n.5 (D. Del. Jan. 15, 2014) (*available at* D.I. 22, ex. B). This is in part due to

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion to stay is DENIED, without prejudice to their ability to renew the motion after the PTO has issued a decision on whether to initiate the above-referenced IPR proceedings.[4] The parties shall timely advise the Court of the PTO's decision in that regard.

Dated: May 1, 2014

*Christopher J. Burke*
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

---

the fact that, based solely on statistical data as to previously-filed IPR petitions, the grant of a petition for IPR is likely. (D.I. 28 at 3-4); *see also Princeton Digital Image Corp.*, at 6 & n.5; *Neste Oil OJY*, 2013 WL 3353984, at *4. For the reasons set forth above, however, in the instant cases, the Court finds it more appropriate to wait to decide a motion to stay until the PTO issues its initial decision.

[4] The Court notes Defendants' concern that "[d]enying this Motion with leave to renew will simply waste resources and require rebriefing in a few months." (D.I. 28 at 2) If Defendants do choose to renew their motion after the PTO's decision, the Court is amenable to considering options proposed by the parties that would streamline that briefing process.

9